NEWARK INSURANCE COMPANY, Plaintiff, *v.* CONTINENTAL CASUALTY COMPANY, Defendant.

First Department, January 28, 1975.

*T. Richard Kennedy* of counsel (*Werner, Kennedy & French,* attorneys), for plaintiff.

*Martin J. McHugh* of counsel (*James M. Kenny* with him on the brief; *McHugh, Heckman, Smith & Leonard,* attorneys), for defendant.

LUPIANO, J. The controversy submitted to this court pursuant to CPLR 3222 is whether the grounding of the tankship *Free State* on October 19, 1964 involved one or two occurrences within the terms of a comprehensive policy of insurance issued by plaintiff, Newark Insurance Co. (hereinafter Newark), to the Anaconda Co. (hereinafter Anaconda) covering property damage of the insured up to $500,000 for each occurrence. Defendant

Continental Casualty Company (hereinafter Continental Casualty) issued to Anaconda an umbrella excess third-party liability policy also covering property damage up to $4,000,000 in excess of the amount recoverable under the Newark policy for any one occurrence. As delineated in the submission, "on October 19, 1964, the tankship 'Free State', while attempting to deliver fuel oil under a contract of affreightment entered into by The Chile Steamship Company, Inc., grounded at Antofagasta, Chile, in a berth operated and maintained by The Chile Exploration Company, Inc." (both corporations being subsidiaries of Anaconda). After Newark and Continental Casualty received notice of loss and copies of a libel and complaint in admiralty brought by the vessel's owner against the Anaconda subsidiaries in the United States District Court, Southern District of New York, Newark undertook the defense of the action on the insured's behalf. The litigants stipulate that "the facts surrounding the grounding of the Free State * * * are as set forth in the Findings and Conclusions of the District Court, as modified by the Memorandum Endorsement entered July 31, 1972" and that "if this Court determines that said grounding involved one occurrence within the terms of the NEWARK policy, then plaintiff NEWARK is entitled, pursuant to the terms of the agreement between the parties dated May 24, 1973, to recover from defendant CONTINENTAL CASUALTY the sum of $132,213.69, together with interest from May 24, 1973 and costs [whereas] if this Court determines that the grounding involved two occurrences within the terms of the NEWARK policy, then defendant CONTINENTAL CASUALTY is entitled, pursuant to the terms of the aforesaid agreement between the parties, to recover from plaintiff NEWARK the sum of $132,213.70, together with interest from May 24, 1973 and costs".

In the policy of insurance issued by Newark to Anaconda, "occurrence" is defined as "an accident, event, or continuous happening or repeated exposure to conditions, which unintentionally causes * * * injury to or destruction of property, including the loss of use thereof, during the policy period * * * Any number of injuries to or destruction of property, including loss of use thereof, resulting from *common cause* or from exposure to *substantially the same general conditions* shall be deemed to result from one occurrence" (emphasis supplied). The tankship *Free State* arrived on October 19, 1964 at Antofagasta, Chile with a cargo of oil for discharge into a submarine pipeline which terminated at an off-shore mooring

berth. At about 1305-½ hours, the vessel, under the command of the master and officers of her owner, advised by a duly licensed Antofagasta pilot, entered the berth and grounded at its bow on an uncharted pinnacle or rock ledge within the area of the berth. In connection with this incident, the District Court found that *" a fortiori,* the unknown rock in the berth was the *sole* cause of the stranding of the Free State " (emphasis supplied). Approximately 17 minutes later, the vessel was freed of the bow stranding. The master then attempted to have the vessel, which was experiencing leakage of oil, leave the berth and in these maneuvers the vessel grounded her stern portion on the rock pinnacle or ledge. The District Court found that the *Free State,* now clearly a vessel in peril, failed to exercise the requisite diligence to obtain the readily available assistance of the tug *Colosso* in attempting to leave the berth and that " the negligent placement of the starboard anchor became a concurrent cause of the second grounding ". Of further critical significance, the District Court found: " Negligence of the Free State did not stop here. By 1323, after the bow damage had occurred, the vessel was free from the obstruction, the starboard (north) buoy lines were still intact, and at least one anchor was holding. The mooring launch was still available; it could have been used to rig additional lines to the starboard buoy; to carry messages to the terminal ashore; or for all of those purposes. Shore personnel aboard the vessel had walkie-talkies which communicated with the petroleum terminal. *There was time to evaluate the situation* " (emphasis supplied).

Patently, under the circumstances delineated above, the separate groundings resulted from common cause only insofar as the vessel made two contacts with the rock or ledge. The initial contact did not partake of human error as it occurred as a consequence of a collision with an uncharted and therefore unknown obstacle. However, at the time of the second grounding, the danger was apparent, the obstacle's presence was known and thus, called for the exercise of due care. The second grounding was caused not by the mere presence of the rock or ledge, but by the concomitant negligence entailed by the faulty efforts to leave the berth. These facts further clearly demonstrate that the property damage to the vessel occasioned by the stern grounding did not result from exposure to substantially the same general conditions. The continuity of conditions was disrupted — there was time to evaluate the situation and to engage in that seamanship necessary to relieve the ship of the danger

now known to be posed by the rock or ledge. To recapitulate: When the vessel was freed after the first grounding and the master engaged in maneuvers to leave the berth — but instead of safely accomplishing this task, the stern of the vessel was grounded — the rock or ledge became a cause again of the property damage, but only because of the intervention of circumstances differentiated by the passage of time; the existence of factors of negligence not present at the first grounding. These factors are so distinct that they imbue the second grounding with a complete and separate aura; thus it must be labeled a second occurrence or accident within the terms of the Newark policy.

Accordingly, defendant should be granted judgment on its counterclaim against the plaintiff in the sum of $132,213.70, together with interest from May 24, 1973, with costs and disbursements.

Settle order providing for judgment.

McGIVERN, P. J., KUPFERMAN and LANE, JJ., concur.

Submission of controversy pursuant to CPLR 3222. Judgment unanimously directed in favor of defendant on its counterclaim against the plaintiff in the sum of $132,213.70, together with interest from May 24, 1973. Defendant shall recover of plaintiff $60 costs and disbursements of this submission of controversy.

Settle order on notice providing for judgment.